Rockingham
No. 85-275
No. 85-277

NORMAN E. WELDY, JR., ADMINISTRATOR OF
THE ESTATE OF NANCY WELDY

v.

TOWN OF KINGSTON

DENISE GERRY b/m/n/f ROBERTA McCARTHY

v.

TOWN OF KINGSTON

July 17, 1986

*Boynton, Waldron, Doleac, Woodman & Scott P.A.*, of Portsmouth (*Charles B. Doleac* on the brief and orally), for Norman E. Weldy, Jr., Administrator of the Estate of Nancy Weldy.

*Bernard J. Robertson*, of Exeter, by brief and orally, for Denise Gerry b/m/n/f Roberta McCarthy.

*Sheehan, Phinney, Bass & Green P.A.*, of Exeter (*David S. Brown* on the briefs, and *Peter F. Kearns* orally), for the Town of Kingston.

JOHNSON, J. These appeals arise out of a single trial in which the plaintiffs sued the Town of Kingston for negligence in connection with a motor vehicle accident. In No. 85-277, the defendant contends that (1) the plaintiff, Denise Gerry, failed to prove that the Town of Kingston breached a duty of care, and that the breach proximately caused the plaintiff's injury; (2) the Trial Court's (*Thayer*, J.) jury instructions were inadequate; and (3) the jury verdict in favor of the plaintiff was excessive and required the trial court to grant a remittitur. The plaintiff Weldy in No. 85-275 requests that this court adopt the doctrine of "pure" comparative negligence, and asserts that RSA 507:7-a, the comparative negligence statute, violates the equal protection and due process provisions of the New Hampshire and Federal Constitutions. For the reasons that follow, we affirm.

On September 11, 1982, five teenagers, three males ages 19, 18, and 15, and two females ages 16 and 13, pooled their money to allow the nineteen-year-old to buy a case of beer for them. At the time, the drinking age in New Hampshire and Massachusetts was twenty. He purchased the alcohol in a store in Raymond, and was not asked to

show any identification. The teenagers drank beer in the car for a short while before their vehicle was stopped by two Kingston police officers at about 8:20 p.m. The posted speed limit was 40 m.p.h., and the officers believed that the vehicle's speed was close to 65 m.p.h. No radar reading was obtained.

The officers approached the vehicle, and one officer removed a beer from the driver's hand and emptied it. The two older teenagers got out of the car and presented the police with identification. The names and ages of the other three teenagers were requested. No formal sobriety tests were given, although the police report indicated that "[a]ll the subjects seemed to have had something to drink and out of 24 bottles, there were 10 bottles missing." In addition, one of the officers observed that the driver had "glassy eyes." The unconsumed beer was confiscated, and the teenagers were permitted to proceed without further detention or parental notification. The officers informed the driver that a report concerning the illegal transportation of alcoholic beverages would be sent to the department of motor vehicles, and could result in the suspension of his license.

The occupants of the vehicle drove to Massachusetts. They decided, at the instigation of the two girls, to purchase more beer. The eldest teenager went into a liquor store in Haverhill, Massachusetts, and again was not asked for any identification. The teenagers continued to drink in the car, eventually arriving at a drive-in movie in Haverhill, where they drank beer until almost midnight. All or most of the second case of beer was consumed, and all of the teenagers were intoxicated.

The group left the movie theatre and eventually drove back to Kingston. While on Route 107, the teenagers noticed car headlights approaching from behind and, believing a police car might be heading towards them, drove off at a high rate of speed. The car failed to negotiate a curve, hit a cement marker, and overturned. Nancy Weldy, the sixteen-year-old girl, died as a result of the accident. Denise Gerry, the thirteen-year-old girl, sustained serious injuries, and her brother Kevin sustained minor injuries.

The plaintiffs brought suit against the driver of the vehicle, the two stores that sold beer to the teenagers, and the Town of Kingston. The suits against the driver and the two stores were settled before trial.

At trial, testimony disclosed that the policy of the Kingston Police Department at the time of the accident was to release teenagers found illegally transporting alcohol and write a letter to the department of motor vehicles. The officers were given discretion to decide whether to detain the teenagers and notify their parents. The

officers involved here testified that they "couldn't reasonably antici-
pate" that the teenagers, once released, would purchase more beer.
The officers, as well as some of the vehicle's occupants, testified that
they believed that the driver was unimpaired and able to drive. At
the close of the plaintiffs' case, the defendant moved for a directed
verdict, and the trial court denied the motion.

The jury found that Nancy Weldy was 55% at fault and, pursuant
to RSA 507:7-a, awarded her nothing. Kevin Gerry was awarded
$5000, reduced by 50% in accordance with his comparative fault.
The jury awarded Denise Gerry $325,000, reduced by 45% for her
comparative fault.

In Denise Gerry's case, the defendant moved for judgment not-
withstanding the verdict, to set aside the verdict, and for remittitur.
The plaintiff in Nancy Weldy's case moved for judgment on the ver-
dict for 45% of her damages and, alternatively, for a new trial on the
issue of comparative negligence. The trial court denied all of the
post-trial motions, and exceptions were taken. The defendant
appealed in Denise Gerry's case, No. 85-277, and the plaintiff Weldy
appeals in No. 85-275. No appeal was taken in Kevin Gerry's case.

## I. *Elements of Negligence*

The first issue before us is the defendant's contention that the
plaintiff in No. 85-277, Denise Gerry, failed to prove the elements of
her negligence case. The defendant asserts that the trial court erred
in denying its motions for directed verdict and for judgment not-
withstanding the verdict.

■■ Our standard of review of a trial court's denial of motions
for directed verdict and for judgment notwithstanding the verdict is
extremely narrow. *See Faust v. General Motors Corp.*, 117 N.H. 679,
683, 377 A.2d 885, 887 (1977). We will uphold a denial of these
motions where sufficient evidence in the record supports the trial
court's ruling. *Reid v. Spadone Mach. Co.*, 119 N.H. 457, 462, 404
A.2d 1094, 1097 (1979). A party is entitled to a directed verdict only
when the movant's case is "the sole reasonable inference from
undisputed facts," and the non-movant's claim is completely without
merit. *See Cutter v. Town of Farmington*, 126 N.H. 836, 839–40, 498
A.2d 316, 319 (1985).

■■ The elements of negligence are a breach of a duty of care
by the defendant, which proximately causes the plaintiff's injury.
*See White v. Schnoebelen*, 91 N.H. 273, 274–75, 18 A.2d 185, 186–87
(1941). We first consider whether the defendant breached a duty of
care owed to the plaintiffs. The test of due care is what reasonable

prudence would require under similar circumstances. *Fitzpatrick v. Company*, 101 N.H. 35, 37, 131 A.2d 634, 637 (1957).

█ The Town of Kingston's unwritten policy did not require detention of teenagers found illegally transporting alcohol, nor did it require the police to notify their parents. The town therefore contends that it is not liable for reasonable errors made in the exercise of police officers' discretion in determining whether to detain the teenagers.

RSA 180:2 provides that

> "[w]hen any . . . duly appointed police officer . . . shall discover any person in the act of transporting intoxicating liquor in violation of this chapter or any other law of this state, . . . it shall be his duty to seize all intoxicating liquors found therein being transported contrary to law. . . . Whenever intoxicating liquors being illegally transported shall be seized by an officer he . . . *shall* arrest any person or persons in charge thereof."

(Emphasis added.) The use of the word "shall" in a statute generally indicates that the provision is mandatory. *See Dover Professional Fire Officers Assoc. v. City of Dover*, 124 N.H. 165, 169, 470 A.2d 866, 869 (1983). Good reasons justify the application of this statute to cases where teenagers are discovered illegally transporting alcohol. The dangers linked to the combination of minors, alcohol, and driving are well-documented. *See generally* Comment, *The Politics and Consequences of the New Drinking Age Law*, 13 FLA. ST. U.L. REV. 847 (1985). We therefore hold that RSA 180:2 requires police officers to arrest teenagers discovered illegally transporting alcohol. The failure of the Kingston police officers to do so was a breach of the statutory duty of care.

██ Moreover, we believe that, regardless of any statutory duty, action in accordance with the town's policy was a violation of the common law duty of due care. Police officers are obligated to protect the general public, and reasonable prudence dictates that teenagers illegally transporting alcohol be detained. The foundation of a cause of action for negligence is the doctrine of foreseeability. "Duty and foreseeability are inextricably bound together." *Corso v. Merrill*, 119 N.H. 647, 651, 406 A.2d 300, 303 (1979). Teenagers who are released after illegally drinking and driving foreseeably present a danger to the public and to themselves, and due care mandates that they be detained and their parents notified.

█ The defendant contends that the plaintiff, Denise Gerry, failed to prove that her injury was proximately caused by the

defendant's conduct. Violation of RSA 180:2 constitutes negligence only if the violation caused the injury by creating a danger that the statute was intended to prevent. *See Fontaine v. Charas,* 87 N.H. 424, 426, 181 A. 417, 418 (1935). The requirement of proximate cause "confine[s] the liability of a negligent actor to those harmful consequences which result from the operation of the risk, or of a risk, the foreseeability of which rendered the defendant's conduct negligent." *Marshall v. Nugent,* 222 F.2d 604, 610 (1st Cir. 1955). The defendant's conduct can be a proximate cause of the plaintiff's injury if it is "a substantial factor in bringing about the harm." *Maxfield v. Maxfield,* 102 N.H 101, 105, 151 A.2d 226, 230 (1959).

 The defendant asserts that superseding acts broke the chain connecting any negligence of the defendant with the plaintiff's injuries. In order to successfully utilize the defense of a superseding cause, the defendant must prove that the injury to the plaintiff was not reasonably foreseeable. *Reid,* 119 N.H. at 465, 404 A.2d at 1099. The defendant argues that the teenagers' voluntary purchase of more alcohol after the initial stop, and the subsequent reckless driving, were not foreseeable at the time of the initial stop. We disagree.

 The teenagers were released after being stopped by the police for illegally transporting alcohol, and after being observed drinking the alcohol in the car, and no immediate sanctions were imposed other than confiscation of the alcohol. We believe that it was reasonable for the jury to conclude that the teenagers' subsequent purchase of more alcohol was foreseeable. Once we conclude that the purchase of more alcohol was reasonably foreseeable, it follows that the consumption of the alcohol and consequent effects of intoxication were also foreseeable. Evidence in the record supports the trial court's denial of the defendant's motions to overturn the verdict. *See Reid,* 119 N.H. at 462, 404 A.2d at 1097.

 ██ The defendant further argues that even if Denise Gerry's conduct after the stop did not constitute a superseding cause, the jury could not rationally have found that the defendant's negligence was the primary cause of her injuries. "Determining the comparative negligence of the parties is a matter for the fact-finder, and its decision will not be set aside if the evidence reasonably supports it." *Bellacome v. Bailey,* 121 N.H. 23, 27, 426 A.2d 451, 453 (1981). Denise Gerry was thirteen years old at the time of the accident, and the jury could reasonably have found that her negligence was less than the negligence of the defendant in permitting the release of the teenagers. We cannot say as a matter of law that the jury erred in its determination of fault.

## II. *Jury Instructions*

 We next address the defendant's challenge in No. 85-277 to the trial court's giving and refusing to give various jury instructions. The defendant first challenges the court's refusal to give an instruction concerning proximate cause which contained the requirement of a "continuous sequence or unbroken sequence of events between the claimed negligent act and the injury." This argument is without merit. The trial court instructed the jury that the plaintiff had to prove that the defendant's negligence directly caused the plaintiff's injuries by showing that "in the absence of negligence on the part of the defendant or the defendant's employee the accident would not have happened." The court further instructed the jury on the significance of intervening events as they relate to proximate cause. We find these instructions more than adequate.

 The defendant also asserts that the trial court improperly failed to instruct the jury that Denise Gerry should be held to an adult standard of care. In *Dorais v. Paquin*, 113 N.H. 187, 304 A.2d 369 (1973), we held that "[o]nce a youth's intelligence, experience and judgment mature to the point where his capacity to perceive, appreciate and avoid situations involving an unreasonable risk of harm to himself or others approximates the capacity of an adult, the youth will be held to the adult standard of care." *Id.* at 190, 304 A.2d at 372. Denise Gerry was a thirteen-year-old girl at the time of the accident. Notwithstanding any experience with alcohol, she failed to appreciate the dangers of drinking and driving, and her judgment had not matured to the level of a reasonable adult in like circumstances. The trial court instructed the jury that Denise Gerry should be held to "the standard of care which an ordinary thirteen-year-old child of her intelligence and experience or knowledge would have exercised in the same or similar circumstances." We find no error in this instruction.

 Finally, the defendant challenges the trial court's instructions concerning Denise Gerry's comparative negligence. Although the court refused to give the defendant's requested instructions, the court fully instructed the jury regarding comparative negligence. The defendant is not entitled to have the court use the exact words of requested instructions. *Rawson v. Bradshaw*, 125 N.H. 94, 100, 480 A.2d 37, 41 (1984). The test of the adequacy of jury instructions is whether the case was fairly presented to the jury so that "no injustice was done to the legal rights of the litigants." *Faust*, 117 N.H. at 686, 377 A.2d at 889. We hold that the trial court's instructions more than adequately presented the case to the jury.

### III. *Jury Verdict*

 The defendant's final argument in No. 85-277 is that the jury verdict in favor of the plaintiff was excessive as a matter of law. Our standard of review of jury verdicts is narrow, and we will uphold a verdict unless "no reasonable person could have made such an award." *Johnston v. Flatley Realty Investors*, 125 N.H. 133, 137, 480 A.2d 55, 57–58 (1984). Evidence at trial indicated that Denise Gerry's injuries caused her pain and limited her enjoyment of her daily activities. We cannot say that the amount of the jury's verdict was so exorbitant that no reasonable fact-finder could have reached the same result.

### IV. *Comparative Negligence*

Finally, we address the plaintiff's argument in No. 85-275 concerning RSA 507:7-a, the comparative negligence statute. The plaintiff urges this court to adopt the doctrine of "pure" comparative negligence, which allows all plaintiffs to recover from negligent defendants in accordance with the degree of fault apportioned to each. RSA 507:7-a permits plaintiffs who are fifty percent or less negligent to recover from negligent defendants, with damages reduced by the plaintiffs' degree of negligence. The basic policy of the statute permits recovery on an "equal-fault basis" "as long as the plaintiff's negligence was not the *primary cause* of the accident." *Hurley v. Public Service Co. of N.H.*, 123 N.H. 750, 754, 465 A.2d 1217, 1220 (1983) (emphasis added).

 We believe that the legislature rejected the doctrine of "pure" comparative negligence based on "a belief that the concepts of 'fault' and 'responsibility' are too deeply-imbedded in our law to justify their being discarded." *See* Nixon, *The Actual "Legislative Intent" Behind New Hampshire's Comparative Negligence Statute*, 12 N.H.B.J. 17, 24 (1969). The adoption of the doctrine of "pure" comparative negligence is more appropriately the province of the legislature, particularly when it was the legislature that enacted the current comparative negligence rule. *Cf. Consol. Util. Equipment Serv's Inc. v. Emhart Mfg. Corp.*, 123 N.H. 258, 261, 459 A.2d 287, 288 (1983).

The plaintiff argues, however, that RSA 507:7-a violates the equal protection and due process provisions of the New Hampshire and Federal Constitutions. The plaintiff did not raise this issue, however, before the trial court instructed the jury, but rather raised it for the first time in a motion for judgment notwithstanding the verdict. Although the plaintiff argues that he objected to the trial

court's decision to send the issue of comparative fault to the jury before sending the issue of damages, the trial court was not informed that the plaintiff's objection was based on constitutional issues.

In this case, the plaintiff was reasonably aware that a request for a declaration that RSA 507:7-a is unconstitutional was out of the ordinary. The plaintiff therefore was obligated to inform the trial court that a new issue was being raised, and is precluded from now raising the issue on appeal. This is distinguishable from the case in which counsel reasonably assumes that the customary instructions will be given and is surprised by a court's ruling. In the latter case, counsel would have no opportunity to raise the issue until counsel became aware that a new issue had arisen.

■■■ The basis for the requirement that the plaintiff first raise an issue below is to give the trial court an opportunity to rule on the issue. *See State v. Thaxton*, 122 N.H. 1148, 1152, 455 A.2d 1016, 1018 (1982). The trial court was not afforded an opportunity to consider the plaintiff's contentions and, therefore, the plaintiff is precluded from raising the issues on appeal.

*Affirmed.*

BROCK, J., dissented; the others concurred.

BROCK, J., dissenting: My qualms with other aspects of the majority's analysis aside, I cannot agree with their conclusion in part I of their opinion that Denise Gerry's injuries were a legally foreseeable consequence of the conduct of the defendant town's agents in this case—the police.

The majority reasons that the teenagers' voluntary intoxication, and the consequent effects of that intoxication, were reasonably foreseeable. I disagree. After initially being stopped by the town of Kingston police early in the evening for exceeding the speed limit, the teenagers drove to Massachusetts, illegally purchased a case of beer, went to a drive-in movie, drank the beer and became intoxicated. Approximately five hours after the police officers had first stopped him, apparently fearing that a police cruiser was following the car, the driver exceeded speeds of 100 mph in an effort to avoid a further encounter with police. It was at this point that the driver failed to negotiate a curve in the road and the fatal one-car accident occurred.

It is my view that neither the behavior of nor the injuries sustained by the teenagers were a legally foreseeable consequence of the police officers' decision not to arrest the youths at the time of the

initial stop. Accordingly, the town should not be held liable for the injuries suffered by either of the plaintiffs in this case.

In effect, the majority imposes a duty on the police, while performing their official duties, to anticipate and to take steps to avoid even the most remote consequences of their discretionary actions. Expecting law enforcement officers to foresee and prevent conduct such as that of the teenagers in this case places an unreasonably onerous burden on them, and to so require is not sound public policy. I respectfully dissent.